Brian A. Ertz (ISB# 9960)
Eileen Johnson (ISB# 9935)
ERTZ JOHNSON, LLP
Post Office Box 665
Boise, ID 83701
Telephone:     (208) 918-1663
Facsimile:      (208) 545-9770
Email:           brian@ertzjohnson.com
                     eileen@ertzjohnson.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDLANDS DEFENSE, ALLIANCE FOR THE WILD ROCKIES, and NATIVE ECOSYSTEMS COUNCIL<br><br>*Plaintiffs,*<br><br>vs.<br><br>MEL BOLLING, in his official capacity as Forest Supervisor of the Caribou-Targhee National Forest, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture<br><br>*Defendants.* | Case No.   4:19-cv-245<br><br>**COMPLAINT FOR INJUNCTIVE**<br><br>**AND DECLARATORY RELIEF** |

## INTRODUCTION

1.      Plaintiffs Wildlands Defense, Inc. ("WLD"), Alliance for the Wild Rockies ("AWR" or the "Alliance"), and Native Ecosystems Council ("NEC")(collectively the "Plaintiffs") bring this civil action for judicial review under the citizen suit provision of the Administrative Procedure Act, which stems from the U.S. Forest Service's ("Forest Service") authorizations, analyses, and lack thereof on the Caribou-Targhee National Forest ("Forest") related to and regarding the Decision Memorandum and Categorical

Exclusion for the Rowley Canyon Wildlife Enhancement Project ("Project").

2.     Plaintiffs Wildlands Defense, Alliance for the Wild Rockies, and Native Ecosystem Council attest that the decisions approving the challenged authorizations, analyses, and lack thereof are arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

3.     Defendants' actions and/or omissions violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5. U.S.C. §§ 701 *et seq.*, because: 1) Prior to implementing a categorical exclusion from environmental review under NEPA, the Forest Service was required to document that the action to be undertaken is insignificant. Part of this "significance" analysis requires the Forest Service to address the cumulative impacts of the Action. The Forest Service failed to do so, in violation of NEPA; 2) The Forest Service failed to support its decision with adequate analysis and discussion regarding the Project's impacts to inventoried roadless area characteristics and in the context of Wilderness potential, in violation of NEPA; and 3) The Forest Service failed to support its decision with adequate analysis and discussion concerning the Project's impacts to sensitive species.

## JURISDICTION AND VENUE

4.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*; the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. ("APA"); the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; and the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*

5.     An actual, justiciable controversy now exists between Plaintiffs and

Defendants. The requested relief is therefore proper under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-06.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, and the affected public lands and resources are located in this judicial district.

7.      Plaintiffs have exhausted all required administrative remedies prior to bringing the instant action.

8.      The federal government waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## PARTIES

9.       Plaintiff WILDLANDS DEFENSE is a regional, membership, nonprofit organization headquartered in Hailey, Idaho dedicated to protecting and improving the ecological and aesthetic qualities of the wildlands and wildlife communities of the western United States for present and future generations. WLD advances its mission by means of landscape and wildlife monitoring and scientific research, by supporting and empowering active public engagement, by publishing and working in support of media outlets, and with legal and administrative advocacy. WLD is headquartered in Hailey, Idaho, has members in several western states, including members and staff that regularly work in and focus on public land and wildlife management in Idaho, and on the Caribou-Targhee National Forest. As an organization and on behalf of its members, WLD has a particular interest in biodiversity and native plant communities including juniper, sagebrush steppe, mountain mahogany, mountain shrubs, and the wildlife and fishes that inhabit them, including those occurring on the

Caribou-Targhee National Forest. Members and staff of WLD live, work, and/or recreate throughout Idaho, and have worked and recreated on the Caribou-Targhee National Forest generally, and in the Project Area particularly.

10.    Plaintiff ALLIANCE FOR THE WILD ROCKIES is a tax-exempt, nonprofit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Idaho in close proximity to the Caribou-Targhee National Forest. Members of the Alliance observe, enjoy, and appreciate Idaho's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project Area.  Alliance's members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems as set forth below. Alliance for the Wild Rockies brings this action on its own behalf and on behalf of its adversely affected members.

11.    Plaintiff NATIVE ECOSYSTEMS COUNCIL is a non-profit corporation with its principle place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Its members use and will continue to use the Caribou-Targhee National Forest, and Rowley Canyon Wildlife Enhancement Project Area for work and for outdoor recreation of all kinds, including fishing, hunting, hiking, horseback riding, and cross-country skiing. The Forest Service's unlawful actions adversely affect Native Ecosystems Council's organizational interests, as well as its members' use and enjoyment of the Project Area. Native Ecosystems

Council brings this action on its own behalf and on behalf of its adversely affected members.

12.    Defendant MEL BOLLING is the Forest Supervisor and chief representative for the Caribou-Targhee National Forest. He has the ultimate responsibility for ensuring that decisions made in the Caribou-Targhee National Forest are consistent with applicable laws, regulations, and official policies and procedures. Defendant Bolling is sued in his official capacity, for his actions as an employee of the United States Forest Service. Defendant Bolling's office is located in Idaho Falls, Idaho.

13.    Defendant UNITED STATES FOREST SERVICE is an agency or instrumentality of the United States, within the U.S. Department of Agriculture. The Forest Service is charged with the authority and duty to manage and protect the public lands and resources of the Caribou-Targhee National Forest.

14.     Plaintiff's members and staff derive scientific, recreational, inspirational, spiritual, aesthetic, educational, journalistic, expressive and other benefits from the public lands, wildlife, ecosystems, and the unique roadless and wilderness characteristics at issue in the instant action on a regular and continuing basis and intend to do so frequently in the immediate future.

15.    Defendants' violations of law, as alleged herein, injure the aforesaid interests and rights of Plaintiffs and their staff, supporters, and members. These are actual, concrete injuries caused by Defendants' violation of law, and the judicial relief sought would remedy, in whole or in part, Plaintiffs' injuries.

5

## STATEMENT OF FACTS

**Rowley Canyon Wildlife Enhancement Project**

16.    On February 13, 2019 the Forest Service released its 'Invitation for Comments – Rowley Canyon Wildlife Habitat Enhancement project' ("Scoping Letter"). The Scoping Letter solicited public comment on the proposed Rowley Canyon Wildlife Habitat Enhancement Project. Accordingly, Plaintiffs Alliance for the Wild Rockies, Native Ecosystems Council, and Wildlands Defense each timely submitted comment on the proposed project.

17.    The Forest Service signed the Decision Memorandum for the Rowley Canyon Wildlife Enhancement Project ("Decision Memo") on June 17, 2019.

18.    The Project is located in southeast Idaho, within Bannock County, west of Downey, Idaho. The Project Area lies entirely within the Caribou National Forest.

19.    Much of the Project Area occurs within the South Elkhorn Canyon grazing allotment. Livestock grazing is a principle factor damaging forest and watershed health in the Westside Ranger District and across the Caribou-Targhee National Forest.

20.    The purported purpose of the Project is to improve and promote elk and deer winter habitat, as well as improve habitat for ruffed grouse and sharp-tailed grouse.

21.    Project activities would occur across approximately 1,666 acres within the 3,955 acre Project Area.

22.    Project activities include pre-felling, lopping, thinning, scattering, grinding, masticating, and broadcast and/or jackpot burning of juniper forests and shrublands within the Project Area.



Decision Memo at 5.

23.     The Project consists of three (3) "Treatment Areas," identified on a map accompanying the Decision Memo.

24.     *Treatment Area 1* will destroy 60-85% of existing juniper trees on northerly aspects with pre-felling, prescribed burning, and track based mastication across approximately 263 acres.

25.     *Treatment Area 2* will destroy 30-60% of existing juniper trees on southerly aspects with selective thinning, lopping, scattering, track based mastication equipment, and jackpot burning across approximately 1,019 acres.

26.     *Treatment Area 3* will destroy existing shrubland habitat and small areas of juniper trees with track based mastication equipment and prescribed burning across approximately 384 acres.

27.     The Scoping Letter and Decision Memo fail to disclose the vegetation species compositions or types of shrubland habitats present on the Project Area, the species compositions or types of shrubland habitats that will be targeted, or those that will be avoided, by Project Activities.

28.     Project Activities will include destruction of sagebrush, sagebrush-bitterbrush, and sagebrush-snowberry communities that may preclude sage-grouse recovery in historic habitat.

**Elkhorn Mountain Inventoried Roadless Area**

29.     The Elkhorn Mountain Roadless Area (#156)("Elkhorn IRA") is comprised of 41,800 acres within Bannock and Oneida counties, Idaho on the Westside Ranger District on the Caribou portion of the Caribou-Targhee National Forest.

30.     The topography of the Elkhorn IRA is typical for the mountain ranges of

8

Southeast Idaho. The elevation varies from 9,095 feet at Elkhorn Peak to about 5,500 feet near the east and south boundaries. The rugged Elkhorn IRA is one of the few relatively large blocks of unroaded and untrammeled wild land amidst an otherwise heavily fragmented and human-influenced landscape.

31.     Of the 41,800 acres within the Elkhorn IRA; 40,000 acres are managed pursuant to the Idaho Roadless Rule's 'Backcountry' theme, and the other 1,800 acres are managed pursuant to the Idaho Roadless Rule's 'General Forest, Rangeland, and Grassland' theme. *See* 73 Fed. Reg. at 61493.

32.     Known TES species occurrences within the Elkhorn IRA include Canada lynx and Townsends big-eared bat, among others, and the area provides moderate habitat potential for wolverines and wolves.

33.     The Elkhorn IRA exhibits significant roadless and wilderness characteristics.

34.     Among the roadless characteristics within the Elkhorn IRA are high quality or undisturbed soil, water, and air; diversity of plant and animal communities; habitat for threatened, endangered, proposed, candidate, and sensitive species, and for those species dependent on large, undisturbed areas of land; primitive, semi-primitive non-motorized and semi-primitive motorized classes of dispersed recreation; reference landscapes; natural appearing landscapes with high scenic quality; etc.

35.     The Elkhorn IRA would be designated as Wilderness under the Northern Rockies Ecosystem Protection Act or ("NREPA").

36.     Currently, ten Senators are sponsoring NREPA in the United States Senate (S. 827) and 40 Representatives are sponsoring NREPA in the United States House of Representatives (H.R. 1321).

37.     Project Activities occur almost entirely within the boundaries of the Elkhorn IRA.

38.     The words "inventoried" or "roadless" or "wilderness" do not occur in the Forest Service's Scoping Letter.

39.     In addition to the inventoried roadless areas, the Project Area occurs within proximity to significant uninventoried roadless areas adjacent to the Elkhorn IRA boundary.

40.     In its current condition the Project Area exhibits remarkable diversity of vegetation types and habitat complexity, particularly as compared to surrounding landscapes outside of the Elkhorn IRA. Additive human impacts associated with Project Activities will significantly affect and simplify the existing complex natural character of this landscape.

41.     The Scoping Letter and Decision Memo fail to disclose, or otherwise consider, existing roadless and wilderness characteristics present on the Project Area.

42.     The Scoping Letter and Decision Memo fail to disclose, or otherwise consider, the species compositions or community types that constitute the diversity of plant and animal communities present on the Project Area, or how and to what extent they may be affected by Project Activities.

**Columbian Sharp-tailed Grouse**

43.     Columbian sharp-tailed grouse (*Tympanuchus phasianellus columbianus*, CSTG) are a medium-sized upland game bird with a light brown appearance, a pointed tail, and visible white spots on their wings.

44.     Columbian sharp-tailed grouse have sustained precipitous declines as a

result of habitat loss, degradation, and fragmentation associated with agricultural development, livestock grazing, wildfire, fire suppression, prescribed fire, expansion of invasive plants, and shrub control activities.

45.     The Eklhorn IRA constitutes among the last, best relatively undisturbed habitats for Columbian sharp-tailed grouse in the area. The extent and degree of surrounding habitat fragmentation and degradation heightens the significance of the relatively undisturbed habitats within the roadless area.

46.     Mountain-shrub communities provide critical winter food resources for Columbian sharp-tailed grouse. The short-term impacts of loss of mountain-shrub communities include the prevention of access to critical winter food resources and cover because it can take several years before shrubs reach sufficient height to protrude above winter snow.

47.     Sagebrush and sagebrush-shrub communities provide crucial Columbian sharp-tailed grouse nesting and brood rearing habitat. Considerable periods of time are required for recovery from disturbance, and recovery may not occur at all if opportunistic exotic species crowd sites following Project and other disturbances.

48.     Invasive species degrade native Columbian sharp-tailed grouse habitat; including whitetop, leafy spurge, rush skeletonweed, yellow star-thistle, knapweeds, dyer's woad, jointed goatgrass, cheatgrass, and other plants; opportunistically proliferate, invading areas following wildfire, shrub control, prescribed fire, and other soil-disturbing management activities. The Forest Services efforts to mitigate invasive species emphasize chemical herbicide application, an additional threat to Columbia sharp-tailed grouse.

49.     Displacement of native and desirable non-native plants reduces wildlife

11

forage, alters thermal and escape cover, can change water flow and availability, and can reduce territorial space necessary for survival.

50.     Livestock grazing is considered a primary factor contributing to the decline of Columbian Sharp-tailed grouse, contributing to the extirpation of the bird from perhaps 75% of its historical range. Grazing in mountain-shrub communities and riparian areas impacts winter habitat. Grazing in late winter-early summer distrupts breeding, nesting and brood rearing. Trampling and browsing of shrub stands diminishes escape and loafing cover. Livestock trampling causes soil and microbiotic crust disturbance proliferating non-native vegetation and weeds.

51.     Project Activities including direct and indirect disturbances associated with pre-felling, lopping, thinning, scattering, grinding, masticating, and broadcast and/or jackpot burning of shrub and junipers, and their understory habitats, cumulatively and synergistically exacerbating the extend and degree of existing livestock impacts.

52.     Project Activities including the immediately aforementioned direct and indirect impacts likewise threaten to cumulatively and synergistically exacerbate the extent and degree of impacts to habitat associated with hotter, drier climates given climate change.

**CLAIMS FOR RELIEF**
**Violation of NEPA and APA**

53.     Plaintiffs reallege and incorporate by reference all previous paragraphs.

54.     The Defendants have authorized the Project in violation of NEPA, 42 U.S.C. §§ 4321. *et seq*. and its implementing regulations.

55.     Before implementing a categorical exclusion from environmental review under

NEPA, the Forest Service must document that the action to be undertaken is insignificant because the threshold question in a NEPA case is whether the Project will significantly affect the environment, thereby triggering the requirement for an environmental impact statement.

56.     Defendants made a determination to categorically exclude the Project during scoping and without determining whether the Project would have significant impacts.

57.     Categorical exclusions are actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in NEPA procedures adopted by a Federal agency.

58.     A proposed action may be categorically excluded from analysis in an environmental assessment ("EA") or environmental impact statement ("EIS") only if there are no extraordinary circumstances related to the proposed action. 36 C.F.R. § 220.6.

59.     Extraordinary circumstances related to the Project exist.

<u>Count 1</u>
*The Forest Service failed to analyze the roadless area characteristics*
*and Wilderness potential of the Inventoried Roadless Areas in the Project Area*

60.     Plaintiffs reallege and incorporate by reference all previous paragraphs.

61.     Resource conditions that should be considered in determining whether extraordinary circumstances related to a proposed action preclude categorical exclusion of the action include presence and effect to an inventoried roadless area or potential wilderness area.  36 C.F.R. § 220.6(b)(1)(iv).

62.     The February 13, 2019 Scoping Letter failed to disclose the Project occurred almost entirely within an inventoried roadless area.

13

63.     Both the same Scoping Letter and the Decision Memo failed to disclose the Project occurred almost entirely within a proposed wilderness area.

64.     In its Decision Memo, Defendants' 'Reasons for Categorically Excluding the Proposed Action,' found that there are no extraordinary circumstances that would warrant further analysis and documentation. The entirety of the analysis and documentation included in the Decision Memo regarding the effects to roadless area characteristics or potential wilderness areas includes:

> Inventoried roadless areas or potential wilderness areas – This area is in the Elkhorn Mountain Inventoried Roadless Area (#156). No roads are being built and no timber harvest/removal from the project area is proposed. Roadless area characteristics will be maintained with project implementation. The project was reviewed by the Idaho Roadless Commission October 29, 2018. Final approval to move forward with no objections from the commission was also received on October 29, 2018.

Decision Memo at 6.

65.     Defendants failed to analyze, consider, and disclose the Project's potential effects and impacts to the roadless characteristics of the Elkhorn Mountain Inventoried Roadless Area.

66.     Defendants did not consider the Project's cumulative impacts to roadless area characteristics.

67.     Additionally, the possibility of future Wilderness classification triggers, at the very least, an obligation on the part of the Forest Service to disclose the fact that Project Activities will affect a potential wilderness area.

68.     Defendants failed to analyze, consider, and disclose the Project's affects to, and in the context of, a potential wilderness area; no attempt was made to assess roadless characteristics, nor the intrinsic worth of the wilderness features of the area.

14

69.    Defendants did not consider the Project's cumulative impacts to, and in the context of, existing wilderness characteristics within the Project Area.

70.    There exists a cause-effect relationship between Project Activities and significant effects to roadless and wilderness characteristics in and surrounding the Project Area.

71.    The Defendants' failure to discuss Project impacts to roadless area characteristics and in the context of their potential Wilderness designation violates NEPA and the APA.

<u>Count 2</u>
*The Forest Service failed to analyze and consider effects*
*to Forest Service sensitive species*

72.    Plaintiffs reallege and incorporate by reference all previous paragraphs.

73.    A resource condition that should be considered in determining whether extraordinary circumstances related to a proposed action preclude categorical exclusion of a proposed action include the presence and effect to Forest Service sensitive species.  36 C.F.R. § 220.6(b)(1)(i).

74.    The entirety of the analysis and documentation included in the Decision Memo regarding the effects to Forest Service sensitive species includes:

> With respect to Forest Service sensitive species, there is the potential for three species in the area (Columbian sharp-tailed grouse, flammulated owl and norther goshawk.). Of these, it was determined that the project will have no impacts on flammulated owl or northern goshawk. The project may impact individual Columbian sharp-tailed grouse but will not likely contribute toward a federal listing or loss of viability.

Decision Memo at 5.

75.    Multiple Forest Service sensitive species occur within or adjacent to the Project

Area.

76.     Columbian sharp-tailed grouse are a Forest Service sensitive Species on the Caribou-Targhee National Forest and occur within the Project Area.

77.     There exists a cause-effect relationship between Project Activities and potentially significant effects to Forest Service sensitive species in and surrounding the Project Area.

78.     The Defendants' failure to adequately consider and discuss potential Project impacts to sensitive species violates NEPA and the APA.

COUNT 3
*The Forest Service failed to analyze cumulative effects of the Project*

79.     Plaintiffs reallege and incorporate by reference all previous paragraphs.

80.     NEPA requires the Forest Service to address cumulative effects of its proposed actions.

81.     A determination of significance requires the agency to consider "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts." 40 C.F.R. § 1508.27(b)(7). Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts. 40 C.F.R. §1508.27(b)(7).

82.     A significant environmental effect may exist even if the federal agency believes that on balance the environmental effects of a proposal will be beneficial. 40 C.F.R. §1508.27(b)(1).

83.     The Forest Service was required to analyze the cumulative impacts of the Project prior to determining that the categorical exclusion was the appropriate track to take on

NEPA, but failed to do so.

84.    The Forest Service failed to analyze cumulative impacts for the Project in violation of NEPA.

85.    The Defendants' failure to analyze cumulative impacts of the Project violates NEPA and the APA.

## <u>REQUEST  FOR RELIEF</u>

For all of the above-stated reasons, Plaintiffs request that this Court award the following relief:

A.    Declare that the Project, as approved, violates the law;

B.    Vacate the Project decision and remand the matter to the agency until such time as the agency demonstrates to this Court that it has adequately complied with the law;

C.    Set aside the Project Decision Memorandum and Categorical Exclusion;

D.    Enjoin implementation of the Project;

E.    Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees under the Equal Access to Justice Act; and

F.    Grant Plaintiffs any such further relief as may be just, proper, and equitable.

Respectfully submitted this 1st day of July, 2019.

ERTZ JOHNSON, LLP


   _/s/Brian A. Ertz_____
   Brian A. Ertz
   *Attorney for Plaintiffs*